DISSENT
MERRITT, Circuit Judge,
dissenting.
My colleagues ignore the fact that the district court found that if the Title VII *329 statute covers unions, plaintiff Phillips has clearly made out a case against the union of creating a hostile, racially discriminatory work place. Based on the Eighth Circuit’s opinion in Dowd v. United Steelworkers of America, 253 F.3d 1093 (8th Cir. 2001), and similar opinions from other circuits, my colleagues are not now asserting that the Title VII statute’s work place environment provisions do not cover labor organizations; but rather they unfairly interpret and distort the facts so as to undermine the protection of racial minorities in the work place that the statute was passed to create. The result of this ploy is to wipe out the work place benefits for racial minorities and the improved work place environment that Congress intended.
In ruling that the Jim Crow-like conduct of the union agents here “would permit a jury to conclude that the defendants created a hostile work environment based on race,” the district court quoted this court’s decision last year that “whether harassment was so severe and pervasive as to constitute a hostile work environment [is] ‘quintessentially a question of fact’ ” that a jury should decide. Smith v. Rock-Tenn Services, Inc., 813 F.3d 298, 310-11 (6th Cir. 2016). My colleagues’ treatment of the issue not as a question of fact but as a question of law not only violates last year’s precedent but precedents created over the entire 220-year history of the Seventh Amendment requiring factual disputes in civil cases to be tried by a jury in cases at law. This is a case at law, not equity, and the jury should hear the testimony of the witnesses in accordance with the legal tradition established by our Founders. It may shield against employers, unions, and judges who may be insensitive to the rights of racial minorities in the work place.
In March 2014, Phillips filed a Title VII charge against the UAW with the Equal Employment Opportunity Commission, and the EEOC, after investigating, issued a right to sue letter to Phillips in January 2015. The EEOC has now filed with this court in the form of an amicus brief a statement of the facts its investigation revealed. The EEOC’s recitation of the facts are attached as an Appendix. Surely if those facts were proved to the jury, a jury verdict for Phillips should not be set aside as based on insufficient evidence, as my colleagues assert. Therefore, I respectfully dissent.
APPENDIX
STATEMENT OF FACTS
The MGM Grand Casino in Detroit hired Plaintiff Tanganeka (Tina) Phillips, who is African American, as a cage cashier in 1999. District Court Record Number (R.) 34-2, PgID#303 (Phillips 11/13/2014 Deposition (Dep.). She became a member of Local 7777 (Local), an affiliate of the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW (UAW), in 2001. Id. Members who joined the Local were automatically members of the UAW as well. Soon after joining the union, Phillips became the MGM Casino Chairperson for the Local, serving on the Local’s executive board. R.34-2, PgID#303 (Phillips 11/13/2014 Dep.). She served in the Casino Chairperson role until she resigned from MGM in September 2015. Id.
As the Casino Chairperson, Phillips’s duties included handling grievances, resolving disputes between union members and MGM, and participating in labor negotiations. Id. at PgID#303-04. These responsibilities required her to work closely with other Local executive board members including bargaining member-at-large De-wight Braxton, Local President Venus Jet-er, and Local Vice President Shimeca *330 McClendon-Jackson. R.34-2, PgID#305; R.39-3, PgID#902 (Jeter Affidavit (Aff.)); R.39-12. PgID#936 (McClendon-Jackson Aff.).
Phillips’s union responsibilities also required her to work with various UAW employees. One such individual was Brian Johnson, UAW International servicing representative assigned to the Detroit area in 2012 to assist local unions with negotiations, contract administration, and grievance-handling. R.34-6, PgID#351 (Isaac-son Aff.); R.39-6, PgID#917 (Phillips Aff.). Another was UAW representative David Kagels, who led negotiations with MGM and other Detroit casinos on behalf of UAW in 2011, 2012, and 2013. R.34-7, PgID#483-84 (Kagels Aff.).
Phillips alleges that she was subjected to a racially hostile environment while performing her union duties. She observed that Johnson generally treated black union members in an aggressive and hostile manner, while treating whites respectfully. R.39-6, PgID#917-19 (Phillips Aff.); see also R.39-12, PgID#937 (McClendon-Jackson Aff.). He would yell at black members and call them incompetent, but speak to whites in a reserved and respectful tone. R.39-6, PgID#918 (Phillips Aff.). He was also violent — Phillips described one incident where he threw a file at her and another where he had to be physically removed from her office. R.39-2, PgID#894 (Phillips 11/13/2014 Dep. at 121-24).
Phillips described several specific incidents of racial hostility. For example, in approximately May 2012, Phillips, Braxton, and Johnson met at the Local to discuss grievances. R.34-2. PgID#312 (Phillips 11/13/2014 Dep. at 133). Johnson kept “cursing at” Phillips, and when Braxton told Johnson “that’s enough,” Johnson asked rhetorically if Braxton was Phillips’s “bodyguard” .because he was “big and black.” Id. Phillips told UAW Region 1 Director Charles Hall about this comment. Id.
From June 2012 until March 2013, UAW and MGM were in negotiations over VIP positions. During one caucus meeting, Ka-gels started naming off union representatives that he would fire if he could, all of whom were black. Id. at PgID#314 (Phillips Dep. at 189-91). To Phillips, this implied that Kagels would fire all the black representatives if he had the authority. Id.
In April or May 2013, Johnson met with Phillips and Braxton at the Local to prepare for a grievance meeting with MGM. R.34-2, PgID#307 (Phillips Dep. at 72). Johnson pulled out a grievance file and asked Braxton and Phillips what the race of the grievant was. Id. at Pg ID#308 (Phillips Dep. at 74-76). Phillips answered, “What does that have to do with anything?” Id.] see also R.34-3. PgID#327-28 (Phillips 10/5/2015 Dep. at 89-90). Johnson replied, “Would you just answer the damn question?” Phillips told him the grievant was black, and Johnson flipped the file over. R.34-2, PgID#308 (Phillips 11/13/2014 Dep. at 75). After Phillips refused to tell Johnson the race of the remaining grievants, Braxton did. Id. at 308-09 (Phillips Dep. at 75, 81). Johnson separated the grievance files based on the race of the grievants, and Phillips concluded that Johnson was withdrawing the grievances of the black members and pushing the grievances of the white members forward to arbitration. R.34-3, PgID#319-20 (Phillips 10/5/2015 Dep. at 44-45); R.39-6, PgID#919 (Phillips Aff.).
Phillips reported Johnson’s conduct to the Local president, Jeter. R.34-3, Pg ID#327-30 (Phillips Dep. at 89-92). Jeter emailed UAW President Bob King a letter dated May 18, 2013 — signed by Jeter and ten Local board members' — complaining *331 about Johnson and Kagels’s “blatant disrespect” for Local members and requesting King’s assistance. R.35-6, PgID#702-04 (5/18/2013 Memo). Kagels responded to Jeter in a June 2013 letter. R.39-9, PgID#929 (6/27/2013 letter). He indicated his belief that he and Jeter, during a March 2013 phone call, had discussed “many of the issues brought up in [Jeter’s] e-mail [to King].” Id. He stated that, not hearing anything further from Jeter, he had “assumed that the issue had subsided.” Id.
In a November or December 2013 meeting, Johnson told Phillips and McClendon-Jackson that the problem with the Local union was “there were too many blacks in the union” and “too many blacks on [the Local] board.” R.39-6, PgID#919 (Phillips Aff.); R.35-1, PgID4542-43 (McClendon-Jackson Dep. at 36-37), R.39-12, PgID#937 (McClendon-Jackson Aff.); R.49-2, PgID#1217 (Phillips 10/5/2015 Dep. at 62-63). Johnson further stated that if the Local “had more whites, [it] wouldn’t have the kind of problems it’s having.” R.49-2, PgID#1217 (Dep. at 63); see also id. at PgID#1217-18 (Dep. at 64-65) (Phillips not sure of “exact dates, but I remember what happened”).
In January 2014, Jeter again wrote to the UAW, this time to UAW Region 1 Director Hall. R.35-7, • PgID#705-06 (1/17/2014 letter). Although Jeter’s May 2013 email to UAW President King had not specifically mentioned race, this letter did. Jeter wrote, “Several members have put in charges with the NLRB against Brother Johnson. Brian asked the Chair and Bargaining Member @ Large ‘WHAT IS THE RACE OF SEVERAL GRIEV-ANTS’. Since when do we represent members by the color of their skin?” Id. at PgID#705.
Hall convened a February 10 meeting attended by at least Hall, Johnson, Phillips, and Jeter to discuss the issues raised in Jeter’s letter. See R.49-2, PgID#1225 (Phillips 10/5/2015 Dep. at 95-96). Before the meeting, Hall conferred with Johnson about the allegations and Johnson denied representing union grievants based on the color of their skin. R.35-9, PgID#709-ll (Hall Dep. at 61-63, 80-83). Hall stated that he did not investigate these allegations closely because, based on his relationship with Johnson and his opinion of Johnson’s character, he believed this was not something Johnson would do. Id. at PgID#711 (Hall Dep. at 83-84).
The day after the meeting, Phillips sent Hall an email listing the reasons she requested the UAW remove Johnson from his assignment to the Local. R.35-8, PgID#707 (2/11/2014 email). Phillips stated that Johnson made an “inappropriate remark toward myself and Dewight (using the color of our skin)” and requested “member’s race when going through the grievances.” Id. Phillips also wrote that she was “in shock to hear [Hall] say that Brian asking a member’s race and separating grievances based on that” information was “common practice.” Id. Jeter also wrote Hall following the meeting. See R.35-10, PgID#713 (2/17/2014 letter).
Hall responded to Jeter, and copied Phillips, on February 17. Id. at Pg ID#713-14. Hall stated that Jeter’s and Phillips’s letters were “filled with inaccuracies,” id., although he later clarified that he was referring only to Phillips’s suggestion that he condoned separating grievances on the basis of race, R.35-9, PgID#710, 712 (Hall Dep. at 77-79, 89). Hall concluded by assuring Jeter that Johnson would treat members of the Local professionally and stating that he expected Johnson to be treated respectfully in re *332-340 turn. R.35-10, PgID#714 (2/17/2014 letter).
Phillips sent Hall a February 25 email with the subject line “Final request for removal of Brian Johnson.” R.15-11, PgID#715 (2/25/2014 email). Phillips reported that Johnson “lost control again” and “went into an angry rage yelling and screaming.” Id. She further stated that “it [had] been 10 months” since she met with Hall to complain about Johnson’s behavior “and still the problems continue.” Id. Phillips told Hall that this was her final request for Johnson’s removal and if action was not taken she would “go outside the UAW.” Id.